IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PARAMOUNT FINANCIAL COMMUNICATIONS, INC. d/b/a PLAN MANAGEMENT CORP. 44 West Lancaster Avenue Ardmore, PA 19003 and JONATHAN MILLER 44 West Lancaster Avenue Ardmore, PA 19003 Plaintiffs, vs. BROADRIDGE INVESTOR COMMUNICATION SOLUTIONS, INC. 51 Mercedes Way Edgewood, NJ 11717 Defendant. | CIVIL ACTION NO. _____ |

# C O M P L A I N T

**INTRODUCTION**

1.     This lawsuit arises out of Defendant Broadridge Investor Communication Solution, Inc.'s ("Defendant" or "Broadridge") fraudulent inducement of Plaintiffs to enter into a Marketing Agreement ("Agreement") with the deceptive intent of not performing its obligations under that Agreement, as well as Broadridge's subsequent material breaches of the Agreement.

2.     Plaintiffs seek compensatory and punitive damages against Broadridge proximately caused by its egregious accrued and continuing breaches

of the Agreement and other breaches of duty as alleged in this Complaint.

**THE PARTIES**

3. Plaintiff, Paramount Financial Communications d/b/a Plan Management Corp. ("Plan Management"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Pennsylvania.

4. Plaintiff, Jonathan Miller ("Mr. Miller"), is an adult resident and citizen of the Commonwealth of Pennsylvania.

5. Defendant Broadridge is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey.

6. Defendant is registered to do business, and is doing business, in the Commonwealth of Pennsylvania, and is subject to general *in personam* jurisdiction of the courts of Pennsylvania and of the federal district courts sitting in Pennsylvania.

7. The matter in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.

8. Jurisdiction of this Court is founded on diversity of citizenship of the parties, 28 U.S.C. § 1332(a).

9. Venue is proper in this district because the events and omissions

giving rise to Plaintiffs' claims occurred in this district.

**F<small>ACTUAL</small> A<small>LLEGATIONS</small> A<small>PPLICABLE TO</small> A<small>LL</small> C<small>OUNTS</small>**

10. Plan Management, Mr. Miller and Broadridge are parties to a Marketing Agreement dated as of March 8, 2010 (the "Marketing Agreement"), a true and correct copy of which is attached hereto as Exhibit A, and incorporated herein by reference.

11. The term of the Marketing Agreement (the "Term") is March 8, 2010 (the "Effective Date") to March 8, 2015.

12. Section 1 of the Marketing Agreement provides in pertinent part as follows:

> By the date that is twelve (12) months from the Effective Date, Broadridge will use commercially reasonable efforts to refer at least 200 Viable Clients to Plan Management (as adjusted, the "Referral Target"). During each twelve (12) month period thereafter during the Term [March 8, 2010 to March 8, 2015], Broadridge will use commercially reasonable efforts to refer such number of Viable Clients as equals or exceeds the Referral Target applicable to the previous twelve month period multiplied by one hundred and ten (110%) percent. As used herein, "Viable Client" is a corporate issuer that has any type of securities or securities-related incentive plan or that expresses an interest in implementing such a plan and expresses to Plan Management or Broadridge an interest in learning about Plan Management's services and which observes a demonstration of Plan Management's OptionTrax® system.

13. Because the Term of the Marketing Agreement, per Section 3 thereof, is five years, Broadridge promised, by operation of the formula set forth in Section 1, to use commercially reasonable efforts to refer at least 1,221 clients to Plan Management by March 8, 2015.

3

14. From March 8, 2010 to the present, Broadridge has referred a total of fourteen "Viable Clients" (as that term is defined in Section 1 of the Agreement) to Plan Management under the terms of the Marketing Agreement.

15. In light of the performance standards set forth in Section 1 of the Marketing Agreement, Broadridge has rendered virtually no performance under the Marketing Agreement.

16. Broadridge failed to use commercially reasonable efforts to refer Viable Clients to Plan Management as required by the Marketing Agreement.

17. Broadridge failed to refer numerous Viable Clients (as that term is employed in the Marketing Agreement) with which Broadridge did business, but intentionally failed and refused to refer such Viable Clients to Plan Management.

18. Broadridge performed extensive due diligence upon Plan Management's reputation and capabilities before the Marketing Agreement was executed.

19. Broadridge entered into the Marketing Agreement to induce the principal shareholder of Plan Management, Plaintiff Mr. Miller, to enter into a Stock Purchase Agreement (the "Stock Purchase Agreement") with an affiliate of Broadridge, Broadridge Output Solutions, Inc. ("BOSI") under which BOSI purchased shares of StockTrans, Inc. from Mr. Miller.

20. As Broadridge knew and understood, Broadridge's agreement to enter into the Marketing Agreement was a material inducement for Mr. Miller to enter

into the Stock Purchase Agreement and for Plan Management to enter into the Marketing Agreement.

21.	Broadridge never intended to perform its obligations under the Marketing Agreement, and signed the contract solely to induce Mr. Miller to enter into the Stock Purchase Agreement.

22.	As a result of the due diligence Broadridge undertook concerning Plan Management, Broadridge was fully aware, at the time it executed the Marketing Agreement, of Plan Management's name recognition, infrastructure, and capabilities within Plan Management's market.

23.	Broadridge's intentional and egregious failure and refusal to refer Viable Clients to Plan Management constituted gross negligence and willful misconduct within the meaning of Section 5 of the Marketing Agreement, and within the meaning of those terms as construed and applied under Pennsylvania law.

24.	Broadridge has terminated the Marketing Agreement, effective March 10, 2015.

25.	Plaintiffs believe, and therefore aver, that Defendant will continue to fail to use commercially reasonable efforts to refer Viable Clients to Plan Management during the period from the date of filing of this Complaint to the termination of the Marketing Agreement on March 10, 2015, in continued breach of the Marketing Agreement.  Such breaches, as and if they occur, are intended to

be encompassed within the claims set forth in this Complaint.

26. As a result of the conduct of Defendant, Plaintiffs have suffered, and will continue to suffer, irreparable injury for which money damages, alone, will be inadequate. Plaintiffs have no complete and adequate remedy at law.

27. Plaintiffs are entitled to a full and complete accounting from the Defendant disclosing, *inter alia*, all Viable Clients of Broadridge which Broadridge failed and refused to refer to Plaintiff Plan Management, and all amounts owing to Plaintiffs as a result of such failure and refusal.

28. Section 2(a) of the Marketing Agreement provides, in relevant part, that Plan Management would pay a "Referral Fee" of $1,000 for each Viable Client referred by Broadridge to Plan Management. Said fee reflects the parties' mutual understanding and acknowledgement that each such client referred to Plan Management would have a value to Plan Management of at least $1,000.00. Defendant Broadridge's failure to refer more than 1,200 Viable Clients to Plan Management (as alleged hereinabove, paragraph 1 of the Marketing Agreement obliged Broadridge to refer 1,221 Viable Clients as of the date hereof) has therefore injured Plan Management in an amount substantially in excess of $1,200,000 (representing $1,000 per client, plus all profits resulting from recurring revenue contracts entered into with many or most of such clients).

## COUNT I

## BREACH OF CONTRACT

### Plaintiff Plan Management vs. Defendant

29. Plaintiff Plan Management incorporates by reference the allegations in paragraphs 1 through 28 of this Complaint.

30. Defendant has failed and refused to use commercially reasonable efforts to refer Viable Clients to Plan Management, and has thus breached the Marketing Agreement as alleged hereinabove.

31. Said breach was a result of the gross negligence and willful misconduct of Broadridge within the meaning of Section 5 of the Marketing Agreement.

32. Defendant failed to remedy such breach despite proper demands therefore.

33. Plaintiff Plan Management has fulfilled any and all conditions precedent to its right to recover damages under the Marketing Agreement.

WHEREFORE, Plaintiff Plan Management demands judgment in its favor and against Defendant in an amount in excess of $75,000.00, exclusive of interest and costs, together with costs of suit, pre-and-post-judgment interest, and such additional relief as this Court deems just and appropriate.

## COUNT II
## FRAUD
### Plaintiffs vs. Defendant

34. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 33 of this Complaint.

35. Defendant and its affiliate, BOSI, were each an agent of the other, with both actual and apparent authority to make representations to Plaintiffs as alleged herein, and each was acting within the scope of said authority when it made each of the misrepresentations and omissions alleged herein.

36. Said representations and omissions were intended to benefit, and did benefit, Broadridge.

37. Defendant, directly and through its agents, intentionally made untrue statements of material fact and omitted to state material facts necessary to make other statements not misleading, with the intent, knowledge and expectation that Plaintiffs would rely thereon.

38. Defendant concealed its misconduct from Plaintiffs, in particular (but without limitation), its fraudulent scheme to induce Mr. Miller to sell his shares of StockTrans, Inc., to BOSI, by promising that Defendant would perform diligently and in good faith under the Marketing Agreement.

39. Defendant was aware that its promises of performance under the Marketing Agreement were a material inducement to Mr. Miller's agreeing to sell

8

his shares of StockTrans, Inc., to BOSI, and, indeed, but for such promises of performance by Defendant, Mr. Miller would not have sold his shares of StockTrans, Inc.

40. Defendant concealed from Plaintiffs the fact that it had utterly no intention of performing its obligations under the Marketing Agreement at the time it signed that Agreement, and, in fact, was signing the Marketing Agreement solely to induce Mr. Miller to enter into said Stock Purchase Agreement.

41. Defendant's state of mind is evidenced, *inter alia*, by its admission in 2014 (during the fourth year of the Term), in response to Plaintiffs' counsel's letter to Defendant dated June 5, 2014, attached hereto and incorporated herein by reference as Exhibit B, that it failed and refused to send Viable Clients to Plan Management because, putatively, Plan Management does not have the infrastructure to support the types of services required by Broadridge's clients, and Plan Management does not have the name recognition in the industry necessary to compete for the type of clients served by Broadridge's transfer agent business (the "Admission"). The Admission is evidenced, *inter alia*, by the June 25, 2014 letter from Defendant's counsel attached hereto and incorporated herein by reference as Exhibit C, and Plaintiff's counsel's response dated August 7, 2014 to that letter is attached hereto and incorporated herein by reference as Exhibit D.

42. Owing to the extensive due diligence Broadridge performed in connection with its purchase of shares of StockTrans, Inc., and in connection with

its entering into the Marketing Agreement, Broadridge was fully aware of Plan Management's name recognition and infrastructure when it executed the Marketing Agreement.

43. Plan Management's infrastructure and name recognition have only increased and expanded since 2009. Broadridge's 2014 Admission that it viewed Plan Management's infrastructure and name recognition as lacking in 2014, evidences, conclusively, that it viewed such attributes as lacking in 2009.

44. Broadridge's Admission in 2014 that it deemed Plan Management's infrastructure and name recognition to be reasons for Broadridge not to perform the Marketing Agreement evidences, conclusively, that it never intended to refer Viable Clients to Plan Management, as of the Effective Date (March 8, 2010) or at any time thereafter.

45. Broadridge willfully and deceptively failed to disclose, in 2010, that it had no intention of referring Viable Clients to Plan Management by reason of the aforementioned perceived deficiencies in Plan Management's infrastructure and name recognition.

46. Despite reasonable diligence, Plaintiffs did not discover until 2014 Broadridge's intention not to perform the Marketing Agreement at the time it was executed, and were unaware, before 2014, that Broadridge had fraudulently deceived them. Defendant concealed its fraud and various other material facts from Plaintiffs until in or about 2014.

47. Defendant's fraudulent promises to perform under the Marketing Agreement, as well as its omissions to inform Plaintiffs that it had no intention of performing such promises, were material.

48. Plaintiffs reasonably and justifiably relied upon Broadridge's fraudulent assurances of performance, as well as the omissions and misrepresentations described herein.

49. Mr. Miller suffered pecuniary loss in an amount in excess of $75,000, as a proximate result of such misstatements, omissions and misrepresentations, because the price he accepted for his shares in StockTrans, Inc., was more than $75,000 lower than it would have been had he known that Broadridge had no intention of performing under the Marketing Agreement.

50. Plan Management suffered pecuniary loss in an amount in excess of $75,000, including loss of business, loss of profits, and other incidental and consequential damages, as a proximate result of the material misstatements, omissions and misrepresentations of Broadridge.

51. The misconduct of Broadridge was grossly negligent, willful, outrageous, malicious, wanton and in reckless disregard of the rights of Plaintiffs, and warrants the imposition of punitive damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000.00, exclusive of interest and costs,

together with punitive damages, costs of suit, pre-and-post-judgment interest, and such additional relief as this Court deems just and appropriate.

# COUNT III
## CONSTRUCTIVE/EQUITABLE FRAUD
### Plaintiffs vs. Defendant

52.  Plaintiffs incorporate by reference the allegations in paragraphs 1 through 51 of this Complaint.

53.  Defendant communicated to Plaintiffs a positive representation of a material fact, to wit, its intention to refer Viable Clients to Plan Management.

54.  Said representation was a material inducement to Plan Management's having entered into the Marketing Agreement.

55.  Plaintiffs had no reasonable means of investigating the truth or accuracy of Defendant's misstatement of its own intentions.

56.  Said representation later proved to be false, due to (i) actual misstatement of Defendant's intent, and/or (ii) gross mistake on the part of Defendant.

57.  Plaintiffs suffered financial injury as a direct and proximate result of their reliance upon said misrepresentation.

58. To the extent, if at all, that their claim for constructive fraud is unavailable if other legal and equitable remedies are available and awarded, Plaintiffs plead this Count III in the alternative.

WHEREFORE, Plaintiffs demand, in the alternative, all appropriate equitable remedies for said constructive fraud, including, without limitation, reformation of the Marketing Agreement, imposition of a constructive trust, equitable damages, and punitive damages.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
### Plaintiffs vs. Defendant

59. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 58 of this Complaint.

60. Defendant, directly and through its authorized agents, negligently made untrue statements of material fact, and omitted to state material facts necessary to make other statements not misleading, with the intent, knowledge and expectation that Plaintiffs would rely thereon.

61. Defendant was under a duty to exercise due care in communicating with Plaintiffs, or authorizing others to communicate with Plaintiffs, concerning the true facts relating to (i) Defendant's intention not to perform the Marketing Agreement, (ii) Defendant's intention not to make commercially reasonable efforts

to refer Viable Clients to Plan Management, (iii) Defendant's conclusion, reached in 2010 but first disclosed in 2014, that Plan Management's putative infrastructure and name recognition would preclude Defendant's referring Viable Clients to Plan Management.

62. Defendant failed to exercise due care in communicating with Plaintiffs, or authorizing others to communicate with Plaintiffs, concerning the true facts relating to (i) Defendant's intention not to perform the Marketing Agreement, (ii) Defendant's intention not to make commercially reasonable efforts to refer Viable Clients to Plan Management, (iii) Defendant's conclusion, reached in 2010 but first disclosed in 2014, that Plan Management's putative infrastructure and name recognition would preclude Defendant's referring Viable Clients to Plan Management.

63. The aforesaid misrepresentations, as supplied by said Defendants for the guidance of Plaintiff, were false.

64. The Defendant had a duty to provide truthful and accurate information to Plaintiffs, and Defendant materially breached such duty.

65. Defendant is liable to Plaintiffs pursuant to Section 552(1) of the Restatement (Second) of Torts which provides as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to the liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise

reasonable care or competence in obtaining or communicating the information.

66. Defendants breached said duty, as alleged herein.

67. Defendant is likewise liable to Plaintiffs under Section 551 of the Restatement (2d), Torts, which provides as follows:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

68. Defendant breached said duties, as alleged herein.

69. Said misconduct of Defendant was grossly negligent, willful and/or wanton, and recklessly ignored the risk of substantial harm to Plaintiffs.

70. Defendant concealed its misconduct and various other material facts from Plaintiffs until in or about 2014.

71.  Plaintiffs reasonably and justifiably relied upon the aforesaid inaccurate information to their detriment.

72.  As a direct and proximate result of Defendant's negligent misrepresentations, as alleged herein, each Plaintiff suffered damages in excess of $75,000.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant in an amount in excess of $75,000.00, exclusive of interest and costs, together with punitive damages, costs of suit, pre-and-post-judgment interest, and such additional relief as this Court deems just and appropriate.

_____
Henry I. Pass, Esquire
PA Atty. I.D. No. 21437
LAW OFFICES OF HENRY IAN PASS
3 Bala Plaza East, Suite 700A
Bala Cynwyd, PA 19004
Tel.:  (610) 660-8001
Fax:  (610) 660-8004
E-mail: hip@hipesq.com

*Counsel for Plaintiff, Paramount Financial Communications, Inc. d/b/a Plan Management Corp.*