IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PARAMOUNT FINANCIAL COMMUNICATIONS, INC., doing business as "PLAN MANAGEMENT CORP.," and JONATHAN MILLER,**  Plaintiffs, | **CIVIL ACTION**  NO. 15-405 |
| v. | |
| **BROADRIDGE INVESTOR COMMUNICATION SOLUTIONS, INC.,**  Defendant. | |

**DuBois, J.**                                                                                                                              **July 6, 2015**

**M E M O R A N D U M**

I.     **INTRODUCTION**

This breach of contracts/torts case arises out of two contracts: a Marketing Agreement between plaintiffs Paramount Financial Communications, Inc., doing business as "Plan Management Corp.," ("Plan Management") and Jonathan Miller and defendant Broadridge Investor Communication Solutions, Inc. ("Broadridge") and a Stock Purchase Agreement between plaintiff Miller and defendant Broadridge. Plaintiffs allege that defendant entered into the Marketing Agreement despite knowing that it could not perform under the contract. Plaintiffs further contend that defendant fraudulently and/or negligently induced plaintiffs to enter into the Marketing Agreement and plaintiff Miller to enter into the Stock Purchase Agreement.

Presently before the Court is defendant's Partial Motion to Dismiss Counts II, III, and IV of the Complaint. For the reasons set forth below, defendant's Motion is granted in part and denied in part.

## II.     BACKGROUND

In the Complaint, plaintiffs allege the following facts:[1] On March 8, 2010, plaintiffs and defendant entered into a five-year Marketing Agreement, with a term extending from March 8, 2010 to March 8, 2015. (Compl. ¶ 7.) Defendant terminated the Marketing Agreement as of March 10, 2015. (Id. ¶ 24.)

Section 1 of the Marketing Agreement provides:

> By the date that is twelve (12) months from the Effective Date, Broadridge will use commercially reasonable efforts to refer at least 200 Viable Clients to Plan Management (as adjusted, the "Referral Target"). During each twelve (12) month period thereafter during the Term [March 8, 2010 to March 8, 2015], Broadridge will use commercially reasonable efforts to refer such number of Viable Clients as equals or exceeds the Referral Target applicable to the previous twelve month period multiplied by one hundred and ten (110%) percent. As used herein, "Viable Client" is a corporate issuer that has any type of securities or securities related incentive plan or that expresses an interest in implementing such a plan and expresses to Plan Management or Broadridge an interest in learning about Plan Management's services and which observes a demonstration of Plan Management's OptionTrax® system.

(Id. ¶ 12.)

As of the date plaintiffs filed the Complaint, January 28, 2015, defendant had referred only fourteen "Viable Clients" to Plan Management. (Id. ¶ 14.) Plaintiffs aver that the Marketing Agreement required defendant to use commercially reasonable efforts to refer at least 1,221 Viable Clients by March 8, 2015, and that defendant "intentionally failed and refused to refer" Viable Clients to Plan Management. (Id. ¶¶ 13, 16-17.)

---

[1] As required on a motion to dismiss, the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

Plaintiff Jonathan Miller, the principal shareholder of Plan Management, also entered into a Stock Purchase Agreement with defendant's affiliate, Broadridge Output Solutions, Inc. ("BOSI"). (Id. ¶ 19.) Under the Stock Purchase Agreement, BOSI purchased shares of Stock Trans, Inc. from plaintiff Miller. (Id. ¶ 19.) Plaintiffs allege that defendant entered into the Marketing Agreement to induce plaintiff Miller to enter into the Stock Purchase Agreement and never intended to perform its obligations under the Marketing Agreement. (Id. ¶¶ 20-21.)

On June 5, 2014, plaintiffs sent a letter to defendant's counsel as a formal notice of defendant's alleged breach of the Marketing Agreement. (Id. Ex. B.) On June 25, 2014, defendant's counsel sent a letter to plaintiffs that stated, inter alia:

> The Marketing Agreement's definition of "Viable Client" requires that clients referred to Plan Management express an interest in learning about Plan Management's services…Plan Management has not had a feasible infrastructure to support the types of services required by Broadridge's clients. For example, Plan Management does not have the name recognition in the industry necessary to compete for the type of clients served by Broadridge's transfer agent business. Due in no small part to Plan Management's lack of name recognition, these clients were not interested in being referred to Plan Management and, therefore, were not "Viable Clients."

(Id. Ex. C.)

Before entering into the Marketing and Stock Purchase Agreements, defendant "performed extensive due diligence upon Plan Management's reputation and capabilities." (Id. ¶¶ 18, 42.) Plaintiffs aver that Plan Management's name recognition and infrastructure have increased since defendant performed its due diligence and that "Broadridge's 2014 Admission that it viewed Plan Management's infrastructure and name recognition as lacking in 2014, evidences, conclusively, that it viewed such attributes as lacking" when it executed the contract in 2010. (Id. ¶ 43.)

In the Complaint, with respect to the Marketing Agreement, plaintiffs allege: breach of contract (Count I), fraud/fraudulent inducement (Count II), constructive/equitable fraud (Count III), and negligent misrepresentation (Count IV). With respect to the Stock Purchase Agreement, plaintiffs allege: fraud/fraudulent inducement (Count II), constructive/equitable fraud (Count III), and negligent misrepresentation (Count IV).

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a complaint, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss brought under Rule 12(b)(6), a civil plaintiff must allege facts that "raise a right to relief above the speculative level." Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Additionally, "[i]n alleging fraud…a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

### IV. DISCUSSION

The Court addresses plaintiffs' claims with respect to the Marketing Agreement and Stock Purchase Agreement in turn.

#### A.   Plaintiffs' Claims With Respect to the Marketing Agreement

In Counts II, III, and IV of the Complaint, plaintiffs allege that defendant fraudulently or negligently misrepresented its intention to perform under the Marketing Agreement to induce

4

plaintiffs to enter into the contract. (Compl. ¶¶ 20-21, 37-38.) Defendant contends that these claims are barred under Pennsylvania's gist of the action doctrine. The Court agrees.

The gist of the action doctrine bars a plaintiff from recovering under tort theories for a defendant's breach of contract. TruePosition, Inc. v. Sunon, Inc., No. 05-3023, 2006 WL 1451496, at *3 (E.D. Pa. May 25, 2006) (internal citation omitted). Whether a claim sounds in contract or tort depends on "the nature of the duty alleged to have been breached." Bruno v. Erie Ins. Co., 106 A.3d 48, 68 (Pa. 2014). "A claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." StockTrans, Inc. v. Rostolder, No. 07-1339, 2008 WL 4111916, at *6 (E.D. Pa. Sept. 3, 2008) (internal quotations and citation omitted).

In this case, plaintiffs base their tort claims on representations and omissions that are grounded in defendant's duties under the contract: namely, defendant's duty to refer Viable Clients to Plan Management. See Penn City Investments, Inc. v. Soltech, Inc., No. 01-5542, 2003 WL 22844210, at *3 (E.D. Pa. Nov. 25, 2003) (concluding that since the representations at issue concerned specific duties that the parties later outlined in the contract, "the gist of the action doctrine preclude[d] such statements from forming the basis of a tort cause of action"). The parties incorporated defendant's promise to refer clients to Plan Management into the Marketing Agreement. Thus, "the fraud is properly considered as fraud relating to the performance of the contract," which is barred under the gist of the action doctrine. Quandry Solutions, Inc. v. Verifone Inc., No. 07-097, 2007 WL 655606, at *3 (E.D. Pa. Mar. 1, 2007) (dismissing plaintiff's tort claims under the gist of the action doctrine, because the claims essentially alleged

that defendant committed fraud by inducing plaintiff into a contract it did not intend to honor); StockTrans, 2008 WL 4111916 at *6 (same).

Furthermore, the gist of the action doctrine bars plaintiffs' tort claims, to the extent that they concern defendant's alleged omissions of material fact: namely, defendant's intention not to perform under the contract and conclusion that plaintiffs' infrastructure and name recognition would prevent defendant from fulfilling its contractual obligations. (Compl. ¶¶ 22, 41, 61.) Defendant's alleged omissions of material fact are "closely intertwined with [plaintiffs'] breach of contract claim, as [they] were intended to facilitate [defendant's]…breach of the agreement." StockTrans, 2008 WL 4111916 at *6. As such, to the extent that plaintiffs' tort claims concern defendant's alleged omissions of material fact, those claims are also barred under the gist of the action doctrine. Id.

For these reasons, that part of defendant's Partial Motion to Dismiss, which seeks dismissal of Counts II, III, and IV of the Complaint, is granted, to the extent that the claims relate to the Marketing Agreement.[2]

### B. Plaintiffs' Claims With Respect to the Stock Purchase Agreement

#### 1. Fraud/Fraudulent Inducement (Count II)

Plaintiffs allege that defendant fraudulently promised performance under the Marketing Agreement to induce plaintiff Miller to enter into the Stock Purchase Agreement. (Compl. ¶¶ 37-40.) The Court concludes that plaintiffs have stated a plausible claim for fraudulent inducement with respect to the Stock Purchase Agreement.

---

[2] Because the Court concludes that plaintiffs' tort claims are barred under the gist of the action doctrine, it does not reach defendant's arguments related to plaintiffs' other tort claims – its constructive fraud and negligent misrepresentation claims in Counts III and IV.

Under Pennsylvania law, the elements of fraud include: "(1) a representation; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another to rely on the misrepresentation; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance on the misrepresentation." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa.1994); Eigen v. Textron Lycoming Reciprocating Engine Div., 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005) (applying the same standard to a fraudulent inducement claim). Although a party alleging fraudulent inducement must "point to a specific statement that caused a particular harm," De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 837 (E.D. Pa. 2011), "[a] statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments, 951 F.2d 1399, 1409 (3d Cir. 1991). In other words, "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Id. at 1410. The Court addresses each of the elements of fraud in turn.

First, it is undisputed that defendant represented its intention to refer clients to Plan Management when it entered into the Marketing Agreement. (Compl. ¶ 53.) Second, plaintiffs allege that Miller relied on this representation in entering into the Stock Purchase Agreement, demonstrating that the representation was material to the transaction. (Id. ¶ 39.)

Third, plaintiffs sufficiently allege that defendant falsely promised to perform under the Marketing Agreement. (Id. ¶¶ 37-40.) To meet Rule 9(b)'s pleading requirements, plaintiffs must plead facts to support the inference that defendant knew its representations were false when made. Timberline Tractor & Marine, Inc. v. Xenotechnix, Inc., No. 98-3629, 1999 WL 248644,

7

at *3 (E.D. Pa. Apr. 27, 1999). In this case, plaintiffs base their fraudulent inducement claim on the following allegations: defendant conducted extensive due diligence before executing the Marketing and Stock Purchase Agreements, Plan Management's infrastructure and name recognition have increased since defendant conducted said due diligence, and defendant acknowledged in 2014 that Plan Management did not have the infrastructure that would allow defendant to refer clients to plaintiffs. (Compl. ¶¶ 18, 40-42.) Taking these allegations as true, one could reasonably infer that defendant viewed Plan Management's infrastructure and name recognition as lacking when it executed the Marketing Agreement in 2010 and thus made a false promise to perform under the contract. (Id. ¶ 42.)

Plaintiffs sufficiently allege the remaining elements of fraudulent inducement. Fourth, plaintiffs aver that defendant had the intent to mislead plaintiff Miller to rely on its promise to perform. Compl. ¶ 37; Fed. R. Civ. P. 9(b). Finally, plaintiffs allege that plaintiff Miller relied on defendant's promise to perform in deciding to sell his shares of StockTrans, Inc. to BOSI, and that he suffered a loss as a result, as he accepted a lower price for those shares. (Id. ¶ 48-49.) Those allegations satisfy the fifth and sixth elements of plaintiffs' fraud claim.

Because plaintiffs plead sufficient facts to state a plausible claim of fraudulent inducement, the Court denies defendant's Partial Motion to Dismiss as to Count II, relating to the Stock Purchase Agreement.

**2. Constructive Fraud and Negligent Misrepresentation (Counts III and IV)**

As to Counts III and IV of the Complaint, plaintiffs allege that defendant induced plaintiff Miller to enter into the Stock Purchase Agreement through omissions of material fact: namely, its intention not to perform under the contract and conclusion that Plan Management's

infrastructure and name recognition would prevent defendant from fulfilling its contractual obligations.[3] (Compl. ¶¶ 22, 37-41, 61.) The Court dismisses Counts III and IV because defendant did not have a duty to speak.

An omission is actionable in tort law only if defendant had a duty to speak. See Chiarella v. United States, 445 U.S. 222, 228 (1980) ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak."); Goldfish Shipping, S.A. v. HSH Nordbank AG, No. 07-3518, 2008 WL 4809410, at *9 (E.D. Pa. Nov. 3, 2008), aff'd 377 F. App'x 150 (3d Cir. 2010). Generally, such a duty arises when a fiduciary or special relationship exists between parties. See Morton's Rest. Grp., Inc. v. Charest, No. 97-7013, 1998 WL 767444, at *4 (E.D. Pa. Nov. 4, 1998). A duty to speak rarely arises between experienced business entities in an arms-length transaction. Id.

In this case, defendant's claims arise out of arms-length transactions between sophisticated parties: namely, the agreement between Plan Management, Miller, and Broadridge to enter into the Marketing Agreement and between Miller and BOSI to enter into the Stock Purchase Agreement. The parties have not cited any Pennsylvania cases imposing a duty to speak on sophisticated business entities, absent a special or fiduciary relationship, and the Court has found none. See Penns Crossing Builders v. Jeld-Wen, Inc., No. 10-3967, 2011 WL

---

[3] To the extent that Count IV- claim of negligent misrepresentation - is based on defendant's affirmative promise to perform under the Marketing Agreement, plaintiffs' claim fails, because a party cannot be negligent as to its future intentions. A negligent misrepresentation claim cannot be based on a statement of opinion or future fact shown to be false at the time it was made. See Bennett v. Itochu Int'l, Inc., 682 F. Supp. 2d 469, 481 (E.D. Pa. 2010) ("At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions.").

4528384, at *5 (E.D. Pa. Sept. 30, 2011) (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 612 (3d Cir. 1995) ("The Third Circuit noted that there was virtually no Pennsylvania case in which a defendant has been held to have a duty to speak when both the plaintiff and the defendant were sophisticated business entities."). Here, the parties have not entered into a fiduciary or special relationship. See Bruno v. Bozzuto's, Inc., 850 F. Supp. 2d 462, 468 (M.D. Pa. 2012) (citing eToll, Inc. v. Elias/Savion Adver., Inc., 2002 PA Super 347, 811 A.2d 10 (2002) ("Parties to an arms-length business contract [can] not be in a 'special relationship.'"). Thus, the Court concludes that defendant had no duty to speak and that defendant's alleged omissions of material fact are not actionable as a negligent misrepresentation or constructive fraud claim.

For these reasons, the Court grants that part of defendant's Partial Motion to Dismiss which seeks dismissal of Counts III and IV of the Complaint, to the extent that those Counts relate to the Stock Purchase Agreement.

**V.     CONCLUSION**

Defendant's Partial Motion to Dismiss is granted with respect to Count II of the Complaint, to the extent that it relates to the Marketing Agreement, and Counts III and IV in their entirety. Defendant's motion is denied in all other respects.

An appropriate order follows.