IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PARAMOUNT FINANCIAL COMMUNICATIONS, INC. d/b/a PLAN MANAGEMENT CORP., et al. | : : : : | CIVIL ACTION |
| v. | : : | |
| BROADRIDGE INVESTOR COMMUNICATION SOLUTIONS, INC. | : : | NO. 15-405 |

## MEMORANDUM OF DECISION

THOMAS J. RUETER  September 28, 2016
United States Magistrate Judge

      Presently before the court is plaintiffs' Motion to Compel Discovery with an accompanying memorandum of law in support thereof (Doc. 28) ("Motion") and defendant's memorandum of law in opposition to plaintiff's Motion (Doc. 30) ("Def.'s Opp."), on which the court heard oral argument on September 9, 2016. For the reasons stated herein, plaintiffs' Motion is granted in part and denied in part.

**I.**      **BACKGROUND**

      1.     This discovery dispute focuses on the production of a document by defendant to plaintiffs in response to a request for production of documents. The document has been referred to by plaintiffs as the "Marketing Agreement," which is Bates stamped "BICS579 to BICS592." The document is a discussion draft of the agreement that is central to this dispute. The draft was originally created on or about February 2, 2010, by defendant and sent to plaintiffs for consideration on or around February 5, 2010. The document contains the comments of several employees of defendant. Plaintiffs claim these comments reflect the defendant

corporation's "subjective intention concerning its intention (or lack of intention) to comply with its obligations to Plaintiff Plan Management under the Marketing Agreement." (Mot. at 6.) As such, plaintiffs argue that these comments are "centrally relevant to Plaintiffs' claim of fraud and breach of contract in this case." Id. Defendant did not claim attorney-client privilege with respect to the draft Marketing Agreement when it was produced to plaintiffs during the current litigation.

2. By two emails dated December 22, 2015, plaintiffs' counsel advised defense counsel that defendant had produced correspondence from Stephen Glantz, Esquire, an in-house attorney at defendant corporation. See Mot., Ex. B. Defense counsel responded to the emails on December 22, 2015, and January 5, 2016, indicating that the documents identified by plaintiffs' counsel as potentially privileged material was, in fact, not privileged. Id.

3. On January 13, 2016, plaintiffs deposed one of defendant's officers, Mark Kopelman, who is not an attorney. See Mot., Ex. D. Plaintiffs' counsel questioned Mr. Kopelman about the draft Marketing Agreement and asked Mr. Kopelman whether he could identify the author(s) of the comments made on the draft Marketing Agreement. At no time during this deposition did defendant raise an objection to testimony about the draft Marketing Agreement on the grounds of attorney-client privilege.

4. Approximately two months later, on March 8, 2016, plaintiffs' counsel took the deposition of Vincent Roux, another employee of defendant. See Mot., Ex. E. Mr. Roux is not an attorney. Mr. Roux testified that within the draft Marketing Agreement, there were comments made by himself, Mr. Kopelman, and in-house counsel Mr. Glantz. Mr. Roux stated that he was unsure who made which particular comment on the draft Marketing

Agreement. Thereafter, counsel for defendant instructed Mr. Roux not to answer any further questions about the document on grounds of attorney-client privilege. See Mot., Ex. E at 184.

5. In the Motion, plaintiffs seek an order compelling Mr. Roux and attorney Glantz to testify regarding their comments on the draft Marketing Agreement. Based on the above described circumstances, plaintiffs claim that defendant has waived the attorney-client privilege relating to privileged communications contained in that document and, more broadly, to any communications relating to the subject matter of the document.

## II.   DISCUSSION

6. In this breach of contract and fraud case, Pennsylvania law applies to all claims and defenses. See Paramount Fin. Commc'ns, Inc. v. Broadridge Investor Commc'n Solutions, Inc., No. 15-405, slip op. at 5 (E.D. Pa. July 6, 2015) (DuBois, J.). Accordingly, this court applies Pennsylvania law to ascertain whether defendant waived the attorney-client privilege with respect to the draft Marketing Agreement. See Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 861-62 (3d Cir. 1994) (applying Fed. R. Evid. 501).

7. "[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." Gillard v. AIG Ins. Co., 15 A.3d 44, 59 (Pa. 2011). "The fact that the client is a corporation does not vitiate the attorney-client privilege." Southeastern Pennsylvania Transp. Auth. v. CaremarkPCS Health, L.P., 254 F.R.D. 253, 257 (E.D. Pa. 2008) (citation omitted). The privilege applies to communications by a corporate

employee purposely made to enable an attorney to provide legal advice to the corporation.  Id. The privilege may apply where the communication is to in-house counsel rather than to outside counsel retained for a particular reason.  Id. at 258.  The primary purpose of the communication at issue must be to gain or provide legal assistance for the privilege to apply because in-house counsel may play a dual role of legal advisor and business advisor.  Id.  Even if the communications between in-house counsel exposes various business concerns, the attorney-client privilege still applies to the communications if the decision made by the corporation "was infused with legal concerns and was reached only after securing legal advice."  Id. (quotation omitted).

        8.      Preliminary or red-lined drafts of contracts are generally protected by attorney-client privilege since they reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege.  Id. at 258, 266.

        9.      A party may waive the attorney-client privilege.  "Once attorney-client communications are disclosed to a third party, the attorney-client privilege is deemed waived." Bagwell v. Pa. Dep't of Educ., 103 A.3d 409, 417 (Pa. Commw. Ct. 2014) (citation omitted). See also Lawless v. Delaware River Port Auth., 2013 WL 180347, at *3 (E.D. Pa. Jan. 16, 2013) (DuBois, J.) (same).

        10.     Pursuant to Rule 502(b) of the Federal Rules of Evidence, however, an inadvertent disclosure of privileged material does not operate as a waiver if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent

disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable), following Federal Rule of Civil Procedure 26(b)(5)(B).[1]

        11.      Whether the attorney-client privilege protects a communication from a disclosure is a matter of law.  Yocabet v. UPMC Presbyterian, 119 A.3d 1012, 1019 (Pa. Super. Ct. 2015) (citing In re Thirty-Third Statewide Investigating Grand Jury, 86 A.3d 204, 215 (Pa. 2014)).  Therefore, the court must review the applicability of the attorney-client privilege with regard to the draft Marketing Agreement.  The court notes that the party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked.  Id.  "Once the party invoking the privilege has made the appropriate proffer, then the burden shifts to the party

---

[1]      Rule 26(b)(5)(B) provides:

> If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.  The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).  In addition, courts in this Circuit have looked to the following five factors in determining whether a privilege has been waived:

> (1) The reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production.
> (2) The number of inadvertent disclosures.
> (3) The extent of the disclosure.
> (4) Any delay and measures taken to rectify the disclosure.
> (5) Whether the overriding interests of justice would or would not be served by relieving the party of its errors.

Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am., 254 F.R.D. 216, 219 (E.D. Pa. 2008).

seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies." Id.  See also Dietz & Watson, Inc. v. Liberty Mut. Ins. Co., 2015 WL 2069280, at *3 (E.D. Pa. May 5, 2015) (party seeking disclosure bears the burden of proving waiver of the privilege) (citing Rhoads Ind., Inc. v. Building Materials Corp. of Am., 254 F.R.D. 216, 223 (E.D. Pa. 2008)).  Thus, in the case at bar, defendant must establish that the attorney-client privilege was properly invoked with respect to the draft Marketing Agreement.  The burden of proof then shifts to plaintiffs to establish that the attorney-client privilege has been waived with respect to that document, or that an exception to the privilege applies.

12. The record demonstrates that defendant produced the draft Marketing Agreement to plaintiffs on or about November 25, 2015.  See Mot. at ¶ 6.  Subsequently, in January 2016, plaintiffs questioned Mr. Kopelman about the document at his deposition, but defendant made no claim of attorney-client privilege with respect to that document at that deposition.  Moreover, defendant simply made no attempt to claw back the document in accordance with Fed. R. of Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B).

13. The production of the draft Marketing Agreement by defendant, and the subsequent failure to assert the attorney-client privilege with respect to the document at the deposition of Mr. Kopelman in accordance with Fed. R. Civ. P. 26(b)(5)(B), therefore, constitutes a waiver of the attorney-client privilege by defendant with respect to the draft Marketing Agreement.  Thus, plaintiffs may depose Mr. Roux and Mr. Glantz regarding the comments made in the draft Marketing Agreement.  However, the waiver of the attorney-client privilege is limited only to the comments within that document.

14. Plaintiffs further argue that defendant's failure to assert the attorney-client privilege with respect to the draft Marketing Agreement constitutes a broad subject matter waiver of any attorney-client communications regarding the Marketing Agreement. This court disagrees for two reasons. First, while the federal courts have recognized a broad subject matter waiver doctrine, "Pennsylvania court have not adopted subject matter waiver." Bagwell, 103 A.3d at 419. Second, when the federal courts have found a subject matter waiver, they have found that the party disclosing the document containing attorney-client materials has intentionally put the protected information into the litigation in a selective, misleading and unfair manner. Judge DuBois explained this limitation on subject matter waiver as follows:

> Pursuant to Federal Rule of Evidence 502(a), when a party discloses privileged material, the waiver extends to undisclosed material only when: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." The Explanatory Note to Rule 502 explains that such an extension of a waiver is "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note (revised Nov. 28, 2007). The Explanatory Note further states that extending the waiver is "limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Id.

Lawless, 2013 WL 180347, at *3. In the instant case, plaintiffs have not established that defendant disclosed the draft Marketing Agreement to gain a tactical advantage. This case is not the "unusual situation[] in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage plaintiff the adversary." Id. Therefore, the court finds that defendant did not waive the attorney-client privilege as to the entire subject matter relating to the Marketing Agreement.

15. Plaintiffs also request the court to conduct an in camera review of twenty-four (24) other documents that were withheld or redacted by defendant on the basis of privilege (the "Twenty-Four Documents"). See Pls.' Mem. in Supp. Mot. at 21-23. It appears that each of these documents includes a communication from Mr. Glantz. Plaintiffs request the court to review the Twenty-Four Documents to ascertain whether the Twenty-Four Documents are subject to the attorney-client privilege. Plaintiffs claim that the court should conduct an in camera review of these documents to ascertain whether: (1) Mr. Glantz was giving business advice as opposed to legal advice to defendant when drafting the communications in the Twenty-Four Documents; and (2) the crime-fraud exception to the attorney-client privilege applies to these documents. The decision to engage in an in camera review rests in the "sound discretion of the district court." United States v. Zolin, 491 U.S. 554, 572 (1989).

16. As with the draft Marketing Agreement, defendant has the initial burden of proving that the Twenty-Four Documents are privileged. In its response to plaintiffs' Motion, defendant asserts that the Twenty-Four Documents are subject to the attorney-client privilege. See Def.'s Opp. at 9-14. Counsel for defendant reaffirmed this representation at the oral argument held on September 9, 2016; however, defendant has not yet met its burden of proof (as it must) that the Twenty-Four Documents are privileged. That is, while defendant provided plaintiffs with a privilege log which identifies the Twenty-Four Documents as privileged, defendant has offered no affidavit or other evidence in support of its burden of proof on the privilege issue.

17. Plaintiffs contend that Mr. Glantz was acting as a business decision-maker when he sent the communications in question, and as such, the Twenty-Four Documents are not subject to the attorney-client privilege.

> "[W]here a communication contains both legal and business advice, the attorney-client privilege will apply only if the primary purpose of the communication was to aid in the provision of legal advice." Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co., 1997 WL 33768546, at *2 (D.N.J. Aug. 12, 1997). Thus, "in order to successfully assert the attorney-client privilege, the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'" Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P., 254 F.R.D. 253, 259 (E.D. Pa. Dec. 9, 2008) (quoting AAMCO Transmissions, Inc. v. Marino, 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991)). "Because legal advice in the corporate community is often intertwined with and difficult to distinguish from business advice, the inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominately legal." See In re Bristol-Myers Squibb Sec. Litig., 2003 WL 25962198, at *5 (D.N.J. June 25, 2003) (internal quotation marks omitted).
>
> This is particularly necessary where in-house counsel is the source of the advice because "[i]n-house counsel performs a dual role of legal advisor and business advisor." See Faloney v. Wachovia Bank, N.A., 254 F.R.D. 204, 209 (E.D. Pa. 2008). For us to find that in-house counsel was acting as a legal advisor, "the corporation 'must clearly demonstrate that the communication in question was made for the express purpose of securing legal not business advice.'" See Kramer v. Raymond Corp., 1992 WL 122856, at *1 (E.D. Pa. May 29, 1992) (quoting AAMCO Transmissions, Inc., 1991 WL 193502, at *3 (E.D. Pa. Sept. 24, 1991)). "In order to meet this standard, and to prevent corporate attorneys from abusing the privilege, the claimant should demonstrate 'that the communication would not have been made but for the client's need for legal advice or services.'" La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 306 (D.N.J. 2008) (quoting Leonen v. Johns-Manville, 135 F.R.D. 94, 99 (D.N.J. 1990)).

Fed. Trade Comm'n v. Abbvie Inc., 2016 WL 4478803, at *7 (E.D. Pa. Aug. 25, 2016).

18. Defendant has not met its initial burden of proof with respect to the applicability of the attorney-client privilege to the Twenty-Four Documents. In addition, defendant did not address in its written submission plaintiff's argument that the attorney-client

privilege is inapplicable to the Twenty-Four Documents because Mr. Glantz acted in his capacity as business advisor when he drafted the communications contained within the Twenty-Four Documents.  On the present state of the record, the court cannot determine whether the Glantz communications contained in the Twenty-Four Documents are privileged in that the communications constitute legal advice or business advice.

19. Plaintiffs also argue in the alternative that the court should conduct an in camera review of the Twenty-Four Documents because the crime-fraud exception to the attorney-client privilege is applicable.  "The 'crime-fraud' exception is an exception to the attorney-client privilege on the ground that the communications between an attorney and her client further future illegal conduct."  Nedler v. Vaisberg, 2006 WL 2460892, at *5 (E.D. Pa. Aug. 22, 2006) (DuBois, J.).  "[I]n situations where the client consults the attorney for the purpose of committing a future crime or fraud, the crime-fraud exception to the attorney-client privilege applies and communications made in furtherance of the anticipated crime or fraud are not protected from disclosure as recognition of 'the privilege is no longer defensible.'"  In re Chevron Corp. 633 F.3d 153, 166 (3d Cir. 2011) (citations omitted).  Plaintiffs bear the burden of establishing that the exception is applicable.  Id. ("A party seeking to invoke the crime-fraud exception . . . bears the burden of demonstrating that the exception is applicable.").  See also Zolin, 491 U.S. at 574-75 ("Before a district court may engage in in camera review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability.").

20. Plaintiffs have not presented sufficient evidence to establish the applicability of the crime-fraud exception to the attorney-client privilege.

21. In view of the above, the court will defer ruling on the request for <u>in camera</u> review of the Twenty-Four Documents until after the deposition of Stephen Glantz and the conclusion of the deposition of Vincent Roux. After that time, plaintiffs may renew their request for <u>in camera</u> review and shall support such application with any new information discovered in the aforementioned depositions.

22. Within fourteen (14) days of the date of this court's Order accompanying this Memorandum of Decision, defendant shall file an affidavit(s) from Mr. Glantz, or any individuals it deems appropriate, to establish that the communications in the Twenty-Four Documents were to aid in the provision of legal advice, not business advice. See <u>Roberts Tech. Grp., Inc. v. Curwood, Inc.</u>, 2015 WL 4503547, at *2 (E.D. Pa. July 20, 2015) (A corporation claiming privilege on the ground that in-house counsel was providing legal advice "can meet its burden by affidavit or counsel's testimony, but cannot simply assert the lack of evidence to the contrary.").

For the foregoing reasons, plaintiffs' Motion is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

\_\_/s/ Thomas J. Rueter_____
THOMAS J. RUETER
United States Magistrate Judge